No. 24,894.

RHODA J. STEDMAN, *Appellant,* v. M. J. DORZWEILER and J. M. SCHAEFER, *Appellees.*

SYLLABUS BY THE COURT.

CONTRACT — *Sale of Land — Deed in Escrow — Purchaser in Default — Deed Wrongfully Obtained and Recorded—Deed Canceled and Title Quieted in Vendor.* Where a contract was made for the sale of land, the deed to be placed in a bank for delivery upon payment of the price, the conduct of the buyer in obtaining possession of the deed and recording it, and in failing for a long period to make payment, is held to justify the seller in calling the deal off.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge. Opinion filed May 10, 1924. Reversed.

*A. D. Gilkeson,* of Hays, and *Guy L. Hursh,* of Topeka, for the appellant. *E. A. Rea,* and *E. C. Flood,* both of Hays, for the appellees.

The opinion of the court was delivered by

MASON, J.: Mrs. Rhoda J. Stedman, a resident of Nebraska, owned a block in an addition to Hays City. She had some correspondence with J. M. Schaefer, of that place, regarding its sale,

as a result of which she sent a deed to a bank there to be delivered in exchange for $750. Schaefer obtained possession of the deed and had it recorded. Mrs. Stedman brought this action to cancel the deed and quiet her title. She appeals from a judgment denying her any relief and quieting title in the defendant.

The plaintiff rests her action on the ground that the defendant had misrepresented to her his relations to the matter and that she had rightfully treated the contract as at an end by reason of his having for a long time failed to pay for the deed, after obtaining possession of it and having it recorded.

Schaefer, who was an abstracter and dealer in real estate, represented to the plaintiff that he had no direct interest in the purchase of the block but was negotiating for its sale to some one else—that he owned a similar block the sale of which would be helped in this way. He made various statements to the plaintiff tending to induce her to sell at his figures by leading her to believe the property less valuable than she supposed—statements which would of course have more weight if made by a disinterested person. By his direction the deed was drawn, naming as grantee M. J. Dorzweiler, whom the evidence shows to have been acting for him, and who has made a quitclaim to him, and as a defendant herein has filed a disclaimer. Schaefer, who will be referred to as the defendant, testified that he was not holding the title for himself, but for the Capuchin fathers. The plaintiff asserts that the defendant professed to be acting as her agent in the deal. The correspondence indicates, however, that her offer of sale was made to him, although with the understanding that he was seeking the property for some one else. The use of Dorzweiler as a holder of the legal title so as not to reveal the identity of the real purchaser did not necessarily imply fraud or a breach of a fiduciary relation.

The negotiations were conducted by correspondence. After some jockeying between the parties the defendant on July 20, 1921, offered to pay $750. On July 27 the plaintiff accepted the offer and notified the defendant of the sending of the deed to the bank with instructions to deliver it to him upon the placing of $750 to her credit there. On July 29 the defendant left with the cashier his check for $750 drawn to the plaintiff's order upon the same bank, in which he had sufficient funds to meet it, but with instructions not to cash it. The defendant testified that he told the cashier to hold the check until he (the defendant) got the abstract. In the

correspondence leading up to the agreement nothing had been said about an abstract. However, one was furnished by the plaintiff a little later—the defendant says in about a month. It showed a mortgage for $600, not released of record, but old enough so that according to the plaintiff's brief the statute of limitation had presumably barred its enforcement. On August 5 the defendant wrote to the plaintiff calling attention to this defect in the record title and saying "The money was paid to the First National as per your instructions but I have now notified them to hold it until I can hear from you." To this the plaintiff answered that she had written her lawyer to look the matter up—that her father said he knew there was no unpaid mortgage. The defendant obtained possession of the deed at some time not definitely shown—he said it was July 29— and on September 3 he had it recorded.

Communications then passed between the parties from which these excerpts are taken:

September 21, defendant to plaintiff: "I wish to advise you that Rea and Flood will not pass title on certificate mailed me a few days ago on account of unredeemed mortgage. . . . I am sorry I recorded deed but will say if you will stand half of expense of quieting title which is $25.00 I will stand other half and close deal. If not satisfactory please advise me and I will get Q. C. deed from party and mail same to you; otherwise notify Mr. Holmes (Holm, the cashier) and I will release money at once."

September 26 (telegram) plaintiff to defendant: "According to your agreement have instructed Gilkeson to clear title."

Letter undated but obviously sent the same day, plaintiff to defendant: "No doubt you have received my dispatch in regard to block 4, and in answer to your letter will say if the title must be clear in order to close the sale, I will agree to stand the half of the costs as *you* agree to do and I have written Mr. Gilkeson to proceed in court at *once* to clear title for you. Hope this will be entirely satisfactory to you, Mr. Schaefer, and you can soon close the sale."

September 27, defendant to plaintiff: "I am in receipt of your telegram advising me that you have made arrangements to have title quieted on the property. This will take it until December, the next session of our district court, which will drag it along for some time again. Would it not suit you better to rebate the $25.00 and settle the matter at once rather than to wait this time? I would like

to get the matter off my hands and be done with it, and will save you some money besides. However, you can suit yourself. If you choose to make the rebate please notify Mr. Holms and we will remit money at once."

September 28, defendant to plaintiff: "I have to-day received a letter from you, undated, informing me that you have instructed Judge Gilkeson to bring suit to quiet title on the property under consideration. We seem to have a lot of misunderstanding about this matter for which there is no necessity; perhaps I have not made myself clear as I should have done in my former letters. As I wrote you yesterday and as Judge Gilkeson told me to-day, this suit can not be brought until next December, the regular term of district court. For this reason I suggested to you in my last letter that you give me a rebate of $25.00 and to instruct Mr. Holms to take $725 in full payment in order to close deal at once, rather than wait for your money until next December. Besides it will cost from $60, to $65 to take the matter through the court and it will be also more advantageous to you than paying ½ of court costs. My party has bought other property and has about backed out. I figure that if, in case, I have to sell these lots to some one else in the future, who is not so particular about the title, I would make $25.00 on the other hand it will cost me at least $60 if I would have to quiet title myself."

The trial court found that the defendant at some time not specified told the cashier to pay the check. The defendant testified:

"I got a letter from plaintiff, and the telegram, informing me that she had instructed Gilkeson to clear the title. Before I went up to Judge Gilkeson [the plaintiff's attorney], I asked Ed Flood [the defendant's attorney] what he thought about the title, and he said there was a flaw in it, but if there was any trouble he would waive it. Then I went and asked Holm if he had sent the check, and he said no. I went to Judge Gilkeson and said that I didn't want to clear the title. I just spoke to him and he said yes, he had a letter to [from] Rhoda to clear the title. I asked how long it would take, and he said until the next term of court. I said these other fellows are clearing title in the meantime, sometimes when they have special courts. He said he didn't want to do that, so I went back and wrote plaintiff, then I went again and told Holm to send it [the money], and he said 'it's out of my hands.'"

Evidently the defendant had not directed the payment of the check when he wrote the letter of September 28, or if he had given such direction he had recalled it, for he there in effect told the plaintiff that unless she agreed to the rebate he proposed she would not get her money before December. The effect of any statement

he may have made to the cashier about the check was nullified by his letters to the plaintiff showing him to be still in control of the money. When he finally did undertake to direct the payment he was according to his own testimony told that the matter was out of the bank's hands—that it was in the hands of the defendant's attorney.

We think the admitted facts justified the plaintiff in calling the deal off. It was part of the contract that the money should be paid to the bank for the benefit of the plaintiff at the time of the delivery of the deed. Assuming that the plaintiff was under an implied obligation to furnish an abstract or at all events to give a marketable title, the defendant, after having obtained and recorded the deed (which he obviously had no right to do without paying the money) was not in a position to negotiate concerning the conditions of such payment. Leaving with the cashier a check made payable to the plaintiff with instructions not to cash it of course accomplished nothing. The defendant's offer to have the grantee make a quit-claim to the plaintiff if she did not accept his new proposition did not better his situation—he was in no position to make terms on this subject. His continued failure to place the agreed price in the bank to the credit of the plaintiff, followed by his notice to her on September 28 that unless she accepted his proposal to take $725 and close the deal at once she would receive nothing until December, warranted the course she pursued. . The defendant is not entitled to have the deed declared effective, for no valid delivery of it was made, nor to have the original contract enforced, because of his conduct in recording the deed and withholding payment.

A reversal is ordered with directions for a judgment quieting the plaintiff's title.